UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM MUHAMMAD,<br><br>Petitioner,<br><br>v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA and T.R. MERICKEL,<br><br>Respondents. | No. 1:15-cv-00794-SKO<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEA CORPUS**<br><br>**(Doc. 6)** |

Petitioner, Kareem Muhammad, is a state prisoner proceeding *pro se* with a petitioner for writ of habeas corpus pursuant to 28. U.S.C. §2254.[1] In his first amended petition, Petitioner presents two grounds for habeas relief: (1) his Fourth Amendment rights were violated when the jury heard evidence obtained through an illegal search and seizure; and (2) the trial court erred in disallowing evidence of Petitioner's mental state at the time of his arrest. Having reviewed the record and applicable law, the Court will deny the petition.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

## I. Procedural and Factual Background

On February 26, 2012, at 5:55 a.m., Bakersfield Police Department Officers received a call regarding a disturbance at a Chevron gas station. An individual reported that a black man wearing a white t-shirt and jeans was inside the store acting strangely, asking the clerk for scissors, and throwing items. Prior to the report from the Chevron gas station, Bakersfield Police Officers received a call from San Joaquin Hospital reporting a black male wearing a white t-shirt asking the nurses for a knife, then walking outside and standing in the roadway. The Officers later identified the subject of both of these reports to be Petitioner.

Bakersfield Police Officer Garrett arrived at the Chevron station first. He saw Petitioner walking away from the station, staggering and high stepping, and clenching his fists. Officer Garrett described Petitioner as sweaty and rigid and believed, based on his behavior, that he was hallucinating and under the influence of a controlled substance.

Officer Garrett twice ordered Petitioner to sit on a curb. Petitioner complied, but kept looking around and was unable to sit still. Officer Garrett tried to place Petitioner under arrest, but Petitioner broke free and ran away from him. Officer Garrett broadcast "148" over his radio to indicate that Petitioner was resisting arrest.[2]

Bakersfield Police Officers Messick and Gavin arrived at the scene approximately thirty seconds after Officer Garrett radioed "148." Officers Garrett and Messick chased Petitioner as he ran away from the Chevron station. Officer Messick ordered Petitioner to stop running, but Petitioner ignored his commands. As Officer Messick came within arm's reach of Petitioner and tried to pull Petitioner towards him, Petitioner turned towards Officer Messick and swung his fist at him. Officer Messick pushed Petitioner backwards and both men lost their balance and fell to

---

[2] California Penal Code § 148 prohibits resisting arrest. Specifically, § 148(a)(1), defines resisting arrest as: "[e]very person who willfully resists, delays, or obstructs any public officer . . ., in the discharge or attempt to discharge any duty of his or her office or employment. . . ."

2

the ground.

While on the ground, Petitioner kicked his legs at the officers. Officer Messick got on top of Petitioner and applied his body weight to the back of Petitioner's right shoulder. Petitioner was able to push himself off the ground despite Officer Messick's fully body weight on top of him. Officer Messick described Petitioner as displaying "super human strength." Officer Gavin put his knee on Petitioner's left shoulder and applied his body weight. Petitioner was again able to place his palms on the ground and lift himself up with two officers on his back.

Office Garret shouted "He's five-fifty B!"[3] The other officers understood this to mean that Petitioner was under the influence of PCP. Officer Gavin struck Petitioner in the ribs in order to pull Petitioner's left hand from underneath his body. Petitioner released his arm and tried to grab Officer Gavin's wrist. Officer Garrett struggled with Petitioner's feet, while Officer Messick tried to bring Petitioner's right hand behind his back.

Petitioner continued to struggle until there was a large cracking sound and his right arm went limp, and broke. Petitioner did not show any sign of pain after his arm was broken. The officers were able to place Petitioner in handcuffs and Officer Messick called an ambulance. When the ambulance arrived and the officers removed Petitioner's handcuffs, Petitioner tried to run away again. The officers regained control of Petitioner and strapped him onto a backboard and placed him into the ambulance.

Officer Messick rode with Petitioner in the ambulance to Kern Medical Center. In the ambulance, Officer Messick asked Petitioner if he could hear him, to which Petitioner responded, "yes, sir." Officer Messick read Petitioner his *Miranda*[4] rights and Petitioner recited them back to Officer Messick. Petitioner stated, "I know them," referring to his *Miranda* rights. Officer

---

[3] The record does not indicate what "five-fifty B" refers to. However, California Health and Safety Code § 11550 states that "[a] person shall not use, or be under the influence of any controlled substance. . . ." Cal. Health & Safety § 11550(a).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Messick asked Petitioner questions in the ambulance, but Petitioner only responded by asking for Officer Messick's gun, promising that he would return the gun after looking at it. At the hospital, Officer Messick asked Petitioner if he would provide the police with a blood sample. Petitioner agreed, and a blood sample was taken from his left arm. His blood tested positive for cocaine and methamphetamine.

On March 2, 2012, Petitioner was charged with being under the influence of a controlled substance (Cal. Health & Safety Code § 11550(a)); resisting arrest (Cal. Penal Code § 148(a)(1)); and (3) assault on a peace officer (Cal. Penal Code § 241(c)). Each was charged as a Misdemeanor.

On November 13, 2013, prior to trial, Petitioner moved to suppress the blood evidence on the basis that the search was illegal. The court heard the motion pursuant to California Penal Code § 1538.5 and denied the motion.[5] The court stated, "[i]n judging the facts and being the fact finder and judging the credibility of the witnesses presented to it, [this court] is going to deny the motion." (Lodged Doc. 4 at 75.)

On June 26, 2014, a jury found Petitioner guilty of all three charges. Petitioner was sentenced to 160 days in custody and three years of probation. Of the 160 days, 120 days were to be completed through a work release program and the additional 40 days were stayed pending successful completion of the program.[6]

In California, misdemeanor appeals are filed with the Appellate Division of the Superior Court.[7] On September 22, 2014, Petitioner filed his appeal with the Appellate Division of the Superior Court of Kern County ("Appellate Division"). On November 10, 2014 the Appellate

---

[5] Pursuant to California Penal Code 1538.5(a)(1)(A), "[a] defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on [ ] the following grounds: (A) the search or seizure without a warrant was unreasonable."
[6] The Court does not have any information about Petitioner's status with regard to the work release program.
[7] Pursuant to California Penal Code § 1466, "[a]n appeal may be taken from a judgment or order, in a[ ] [ ] misdemeanor case, to the appellate division of the superior court of the county in which the court from which the appeal is taken is located. . . ."

Division affirmed the trial court without an opinion.

On February 25, 2015, Petitioner filed an Application to "Certify [the] Case for Transfer to the Court of Appeal," which was summarily denied by the Appellate Division on March 4, 2015.[8] On March 27, 2015, Petitioner filed his Petition for Transfer with the Fifth District Court of Appeal ("Court of Appeal"),[9] which was denied on April 17, 2015.[10] On April 24, 2015, Petitioner filed a Petition for Review with the California Supreme Court. The Supreme Court returned the appeal unfiled pursuant to California Rules of Court 8.500(a)(1) on April 20, 2015.[11]

On August 12, 2015, Petitioner filed his first amended petition alleging two grounds for habeas relief: (1) his Fourth Amendment rights were violated when the jury heard evidence obtained through an illegal search and seizure; and (2) the trial court erred in disallowing evidence of Petitioner's mental state at the time of his arrest. Respondent filed a response to the amended petition on November 12, 2015, and Petitioner filed a reply on December 2, 2015.

## II. **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's

---

[8] The Appellate Division "may certify a case for transfer to the Court of Appeal on its own motion or on a party's application if it determines that transfer is necessary to secure uniformity of decision or to settle an important question of law." Cal. Rules of Court 8.1005(a).
[9] "A party may file a petition in the Court of Appeal asking for an appellate division case to be transferred to that court only if an application for certification for transfer was first filed in the appellate division and denied." Cal. Rules of Court 8.1006(a).
[10] "If the Court of Appeal denies transfer of a case from the appellate division of the superior court . . . after a party files a petition for transfer, the denial is final immediately." Cal. Rules of Court 8.1018(a).
[11] A petitioner has a right to file a petition for review in the California Supreme Court, except in the case of "the denial of a transfer of a case within the appellate jurisdiction of the superior court." Cal. Rules of Court 8.500(a)(1).

provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring) [hereinafter *Virginia*]. Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*,

6

537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

Petitioner's request to transfer his case to the Court of Appeal was summarily denied, so there is no reasoned state court opinion for the Court to review. Consequently, this Court must "perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable." *Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011) (internal citations omitted). "Independent review of the record is not de novo review of the constitutional issues, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (internal citations omitted). Even where there is no reasoned decision, the petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

### III. Resolution of Petitioner's Fourth Amendment Claim by the State Court of Appeal Does not Present a Cognizable Federal Claim.

In his first ground for habeas relief, Petitioner argues that his Fourth Amendment rights were violated because the prosecution did not prove that his consent was freely and voluntarily given for the blood sample; therefore, the evidence should not have been presented to the jury. (Doc. 6 at 12.) Petitioner alleges that the admission of this evidence resulted in harm and prejudice that affected the outcome of the trial. *Id.* Respondent counters that since Petitioner was provided the opportunity to raise this Fourth Amendment claim in state court, he is precluded from raising the claim on federal habeas review. (Doc. 12 at 17.)

#### a. Standard of Review for Fourth Amendment Claims

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The relevant inquiry for Fourth Amendment claims is "whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (1996) (internal citations omitted).

#### b. The Fourth Amendment Claim Is Not Cognizable Through Federal Habeas Proceedings Because Petitioner Received a Full and Fair Opportunity to Litigate His Claim in State Court.

Here, Petitioner argues his conviction was based on evidence, the blood test, which was gained through an unconstitutional search and seizure. (Doc. 6 at 12.) However, Petitioner was afforded a full and fair opportunity to raise this Fourth Amendment claim in the state court. Petitioner filed a California Penal Code § 1538.5 motion to suppress.[12] (Lodged Doc. 1 at 57-59.)

---

[12] Pursuant to California Penal Code 1538.5(a)(1)(A), "[a] defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on [ ] the following grounds: (A) the search or

8

The trial court held a hearing on the motion on November 13, 2013, and Officers Garrett and Messick testified. (Lodged Doc. 4.) After considering the motion, response, and testimony, the trial court denied the motion to suppress. *Id.* at 75. The court stated, "[i]n judging the facts and being the fact finder and judging the credibility of the witnesses presented to it, [this court] is going to deny the motion." *Id.*

Petitioner does not dispute that he received a hearing on his motion to suppress, but instead argues that the trial court's decision was incorrect. Given that Petitioner had the opportunity for "full and fair litigation" of his Fourth Amendment claim in state court, "the Constitution does not require that [Petitioner] be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482. Consequently, the Court will deny Petitioner's claim that his Fourth Amendment rights were violated.

### IV. Evidentiary Decisions Are Matters of State Law, Not Cognizable on Federal Habeas Review.

In his second ground for habeas relief, Petitioner contends that the trial court erred in not allowing the presentation of evidence about his mental state at the time of his arrest. (Doc. 6 at 13.) Respondent counters that Petitioner's claim raises a question about the violation of state law, which is not cognizable of federal review. (Doc. 12 at 18-19.)

#### a. Standard of Review for Evidentiary Decisions

Issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned

---

seizure without a warrant was unreasonable."

9

review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). "Although the [U.S. Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101.

### b. Evidentiary Decisions Made by a State Court Are Generally Not Reviewable by the Federal Court

Officer Messick testified at the November 13, 2013, suppression hearing. (Lodged Doc. 4 at 2-60.) Petitioner represented himself at the hearing and during cross-examination asked Officer Messick, "[w]ould you think that it was reasonable to say that the suspect had an altered mental status during this incident?" *Id*. at 53. The prosecutor objected to the question, stating that it "calls for speculation," and the court sustained the objection. *Id*. at 53-54. On appeal to the Court of Appeal, Petitioner contended that the court improperly sustained the objection, because "speculation is not an objection in and of itself as it is not specifically listed in the Evidence Code. Speculation is an acceptable objection when a question asks the witness to form an opinion based upon a lack of facts or expertise." (Lodged Doc. 8 at 18.)

Petitioner maintains that Officer Messick could have properly testified to the question whether Petitioner "had an altered mental status" based on his training and experience as a police officer. *Id*. at 19. Petitioner contends that the court erred by preventing Petitioner from asking Officer Messick about Petitioner's mental state. (Doc. 6 at 13.) However, this Court may not review whether evidence was incorrectly admitted pursuant to state law, because "federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497, U.S. 764, 780 (1990)). On habeas review, the Court may only decide whether Petitioner's conviction violated the Constitution, laws, or treaties of the United

States. *Id.* at 68; 28 U.S.C. § 2241. Here, Petitioner does not argue that the admission of this evidence violated his constitutional rights; consequently, the Court will deny his request for habeas relief.

**V.     Certificate of Appealabilty**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**VI.     Conclusion**

Based on the foregoing, the Court hereby DENIES with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated:     **January 30, 2018**                    /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE